```
 1                UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF FLORIDA
 2                      MIAMI DIVISION

 3              CASE NUMBER 14-20301-CR-MORENO

 4   UNITED STATES OF AMERICA,

 5              Plaintiff,              Courtroom 13-3

 6     vs.                             Miami, Florida

 7   ANNARELLA GARCIA,                 August 26, 2014

 8              Defendant.

 9   ================================================

              SENTENCING PROCEEDINGS
10      BEFORE THE HONORABLE FEDERICO A. MORENO
              UNITED STATES DISTRICT JUDGE
11   ================================================

12   APPEARANCES:

13   FOR THE GOVERNMENT:      ANNE MCNAMARA, AUSA
                             United States Department of Justice
14                           Criminal Division, Fraud Section
                             1400 New York Avenue, NW
15                           Washington, DC 20530
                                              202.304.2946
16
     FOR THE DEFENDANT:       MARIO A. MACHADO, ESQ.
17                            AVELINO J. GONZALEZ, ESQ.
                             Avelino J. Gonzalez, P.A.
18                           6780 Coral Way
                             Miami, Florida 33155
19                                            305.740.8985
                                       Fax:   305.668.3545
20
     REPORTED BY:             GILDA PASTOR-HERNANDEZ, RPR, FPR
21                           Official United States Court Reporter
                             Wilkie D. Ferguson Jr. US Courthouse
22                           400 North Miami Avenue - Suite 13-3
                             Miami, Florida  33128   305.523.5118
23                           gphofficialreporter@gmail.com

24

25
```

1                        **TABLE OF CONTENTS**

2                                                            Page

3

4
         Reporter's Certificate ..................................... 29
5

6

7

8

9                           **EXHIBITS**

10    Exhibits                  Marked for          Received
                                Identification     in Evidence
11
      Description                  Page      Line     Page    Line
12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (The following proceedings held at 10:19 a.m. were

2     interpreted to defendant by Margarita Lloyd-Godsk and Elena de

3     Jongh:)

4          THE COURT:  The codefendant, Annarella Garcia, does she

5     need an interpreter?

6          MR. MACHADO:  Yes, Your Honor.

7          THE COURT:  Okay.  The interpreters have stated their

8     names.  Same prosecutor.  Same probation officer?

9          THE PROBATION OFFICER:  Yes, Your Honor.

10         THE COURT:  Okay.  Who do we have on behalf of the

11    defendant?

12         No, she stays right there at the lectern, not behind.

13         Who do we have on behalf of the defendant?

14         MR. MACHADO:  Yes, good morning, Your Honor.  Mario

15    Machado on behalf of Ms. Garcia.  Also appearing today before

16    the Court is Mr. Avelino Gonzalez to her right.

17         THE COURT:  Okay.  You can raise the lectern, if you

18    want.

19         MR. MACHADO:  That's what I'm looking for, Your Honor.

20         THE COURT:  There's a button.

21         MR. MACHADO:  There we go.

22         THE COURT:  Are you ready to proceed or not?

23         MR. MACHADO:  Yes, we are ready to proceed, Your Honor.

24         THE COURT:  Whatever you want.  If you want to be

25    sentenced at the same time as the other defendant, I have

1    absolutely no problem.

2         MR. MACHADO:  I would like to proceed on resolving the

3    objections we have remaining to the Presentence Investigation

4    Report as well as two addendums, namely.  The only remaining

5    objection --

6         THE COURT:  Okay.  Hold on.  I just wanted to know if

7    you wanted to proceed or not.

8         MR. MACHADO:  I apologize.

9         THE COURT:  That's all.  I have to do things in order.

10        I know you filed a Sentencing Memorandum, yesterday,

11   right?

12        MR. MACHADO:  Yes, Your Honor.  That would have been

13   filed earlier except I was waiting for the --

14        THE COURT:  That's all right.  I don't have any

15   problems with getting it.  It just means I have to read it a

16   little bit later, but I don't have any problems with it.  Does

17   the Government -- that is, the Government has filed a memo in

18   support of the Presentence Investigation Report for both

19   defendants.  Do you have any problems with receiving?  Did you

20   read it?

21        MS. McNAMARA:  Yes, Your Honor.  We have no problems

22   with the timing of the objections.  I believe the only issue

23   today going forward is whether sophisticated means should be

24   applied.

25        THE COURT:  Whether what?

1         MS. McNAMARA:  Whether the sophisticated means should

2    be applied and whether --

3         THE COURT:  I understand.  We'll get to that in a

4    second.  I just want to know if you're ready to go.  Both sides

5    are ready to go?

6         MS. McNAMARA:  Ready to go.

7         THE COURT:  I mean, we have the codefendant who says I

8    need the 35 days.  You want 35 days?  The rules say 35 days.  I

9    don't have any problem.  I'm not going to fault the probation

10   officers because they're doing the best they can.

11        Okay.  Ms. Garcia, I have read and reviewed the entire

12   Presentence Investigation Report.  I assume with the help of an

13   interpreter you have read it as well.  Am I right?

14        THE DEFENDANT:  Yes, Your Honor.

15        THE COURT:  Okay.  The probation officer has calculated

16   the guidelines as 87 to 108 months with an adjusted offense

17   Level 29, Criminal History Category I.  The healthcare fraud

18   here is $6,257,142.  And there is an objection to the

19   sophisticated means and the defense is making that objection.

20   I've also read the objections, the Sentencing Memorandum and the

21   Government's response.

22        Are there any additional objections or are there any

23   objections from the Government?

24        MS. McNAMARA:  No, Your Honor.

25        THE COURT:  From the defense?

1          MR. MACHADO:  Just a small caveat, Your Honor.  We

2   noted in our objections that in addition to the sophisticated

3   means, we objected to the PSI Report, in reference to the

4   recommendation for her to be recommended to the drug and alcohol

5   program.  That's the only caveat.

6          THE COURT:  You put that in there, anyway, didn't you?

7          MR. MACHADO:  Yes, Your Honor.  And the probation

8   officer was gracious enough to include the language, but not the

9   recommendation though.

10         THE COURT:  Okay.  "Okay" means I understand.  I

11  usually wait until the end for that.

12         Sophisticated means; every healthcare fraud gets an

13  enhancement for sophisticated means?

14         MS. McNAMARA:  Your Honor, we believe sophisticated

15  means applies in this case.

16         THE COURT:  Well, I know that, but see, that's an easy

17  one.  You've said that already.  My question is:  Does every

18  healthcare fraud have sophisticated means enhancement?

19         MS. McNAMARA:  In my personal experience, the

20  overwhelming majority of Medicare fraud cases down here do.

21         THE COURT:  Okay.  Everybody is sophisticated here.  In

22  other states, they're unsophisticated.  That's pretty neat to

23  hear.  Usually, the people in the northeast think we're bunch of

24  unsophisticated people, but I guess we're sophisticated when it

25  comes to crime.

1          Give me the example of a case, a healthcare fraud case,

2  where someone does not use sophisticated means.

3          MS. McNAMARA:  A hypothetical example would be --

4          THE COURT:  Oh, you can give me a real case.  That

5  would be nice.  You said the overwhelming majority of the cases

6  here.  So give me the minority of the cases.

7          See, if I hear from you there and then I'll ask the

8  defense why, and then I'll make a ruling.  How's that?

9          MS. McNAMARA:  Absolutely.  A case would be a patient

10  recruiter who was paid kickbacks by checks with no shell

11  companies, no fraudulent, you know, falsification of medical

12  records.

13         THE COURT:  So every owner or manager who does this

14  will get the sophisticated means in your view?

15         MS. McNAMARA:  It would depend on the way in which they

16  carry out their scheme.  Did they use --

17         THE COURT:  Give me a scheme where it wouldn't apply.

18         MS. McNAMARA:  As an owner?

19         THE COURT:  Yeah.  See, I'm putting you in the place of

20  a defense lawyer, but, you know, that's good because you should

21  always think about how your opponent presents things.  That's

22  the best way to argue against them.

23         Can't think of one, right?

24         MS. McNAMARA:  Off the top of my head, I cannot, Your

25  Honor.

1        THE COURT:  So the bottom line is you think every

2   manager and every owner, they use sophisticated means.  How

3   sophisticated is it?  What do they do?  What's so sophisticated

4   about this?

5        MS. McNAMARA:  Sure.  In this particular case,

6   Professional Home Health billed for services that were not

7   medically necessary and/or not provided and the way that they

8   did that --

9        THE COURT:  If not, they wouldn't be guilty.  That's a

10  given.

11       MS. McNAMARA:  So the way that they did that --

12       THE COURT:  They stole money from Medicare.

13       MS. McNAMARA:  They did.

14       THE COURT:  And what's so sophisticated about it?

15       MS. McNAMARA:  So the defendants and their

16  co-conspirators --

17       THE COURT:  No, just her; I want to know about her.  I

18  take each defendant --

19       MS. McNAMARA:  Yes, Your Honor.

20       THE COURT:  -- because there are some patient

21  recruiters here, right?

22       MS. McNAMARA:  In this Indictment, there are not.

23       THE COURT:  In this conspiracy, there are no patient

24  recruiters.  Okay.

25       MS. McNAMARA:  The broader conspiracy, unindicted

1    co-conspirators, yes.

2              THE COURT:  So I just want to know about Garcia.

3              MS. McNAMARA:  Ms. Garcia was the operator and

4    effective owner of Professional Medical Home Health.

5              THE COURT:  Okay.

6              MS. McNAMARA:  And she owned it during the entire time

7    that it had its Medicare number.  As the owner and operator of

8    Professional, she was the one who facilitated the entire

9    kickback scheme, and as part of that scheme, she would offer and

10   pay kickbacks to patient recruiters often by means of cash or

11   paid out to shell companies so as to evade --

12             THE COURT:  Okay.  Before we get to the shell

13   companies, until now, it's not sophisticated.  It's just plain

14   old Medicare healthcare fraud, right?

15             MS. McNAMARA:  If the Court would permit me to

16   continue?

17             THE COURT:  No.  If I permitted you to continue --

18   that's what you want me to do?  You don't want me to interrupt

19   you?  Just let you say what you want and then rule.  Okay.

20   We'll do it that way, if that's what you want.  It's not

21   effective, but if it makes you feel better, we'll do it that

22   way.

23             MS. McNAMARA:  So the point at which this becomes

24   particularly sophisticated is the way in which --

25             THE COURT:  That's the point I want to get to.

1            MS. McNAMARA:  -- the money moved.

2            I know.  The way in which the money moved back and

3     forth --

4            THE COURT:  Tell me, how did it move?  Giving cash to

5     the patient recruiters, that's not sophisticated.  That's

6     unsophisticated.

7            MS. McNAMARA:  Ms. Garcia requested that Annilet

8     Dominguez, the codefendant in this case, open up a shell

9     corporation called Quick Employee and through this Quick

10    Employee Corporation, she paid unindicted co-conspirators.  This

11    is done as an effort to conceal the fraud.

12           THE COURT:  Okay.  Now, that would mean that your

13    position is, of course, that Annilet Dominguez should also get

14    the sophisticated means enhancement.

15           MS. McNAMARA:  Indeed, that is our position.

16           THE COURT:  Even though she just did it because she was

17    told to as being the underling, but she is an underling

18    administrator.

19           MS. McNAMARA:  As Your Honor is undoubtedly aware

20    because the charged offense is a conspiracy, the Court has the

21    option to look at the totality of the scheme, and if that is

22    sophisticated, then any one of the codefendants can be found to

23    have used sophisticated means.

24           THE COURT:  Why should they be found?  See, that's more

25    important than what we can do.  I know what I can do.  I can do

1    a lot of things.

2         MS. McNAMARA:  There's a second part to this story, and

3    that is the medical documentation here.

4         THE COURT:  Who did that?

5         MS. McNAMARA:  So the medical documentation was filled

6    out by a variety of unindicted co-conspirators and was done so

7    at the direction of Ms. Garcia.

8         THE COURT:  Let me interrupt you.  Do you agree with

9    that?

10        MR. MACHADO:  I would agree that --

11        THE COURT:  Just the last statement.  I know you all

12   don't like me to interrupt you.  You want to just regurgitate

13   what you've written, but that's not effective either, from

14   either side.

15        Is there 5K1 motion?

16        MS. McNAMARA:  There is not, Your Honor.

17        THE COURT:  Is there an expectation of a Rule 35?

18        MS. McNAMARA:  Yes, Your Honor.

19        THE COURT:  So she intends to continue to cooperate?

20        MS. McNAMARA:  Yes, Your Honor.

21        THE COURT:  Okay.  In my experience, not all cases, but

22   the overwhelming majority of the cases where the defendant wants

23   to cooperate, there's no dispute of the facts.  Of course, not

24   in every case.  There are a lot of cases where all of a sudden

25   there's a dispute of the facts.  So that's why I interrupted,

1  and I said, do you agree with the last statement by the

2  prosecutor about what she did to hide the fraud and to pass on

3  the money to the unindicted co-conspirators.

4          MR. MACHADO:  Not entirely, Your Honor.

5          THE COURT:  So he doesn't agree with it.

6          So we have a defendant who's cooperating who disagrees

7  with the prosecutor, which means that it would lessen the chance

8  of a Rule 35, or if I'm wrong, tell me.  Am I wrong from the

9  Government's perspective?

10         MS. McNAMARA:  Your Honor, we appreciate a clean

11 record.  But without knowing what defense counsel agrees on --

12         THE COURT:  Well, see, once people say something, it's

13 hard to backpedal, that's the problem, especially with a Rule

14 35.

15         Do we have a dispute of what happened here  or is it

16 just a legal dispute or is it a factual dispute?

17         MR. MACHADO:  Our dispute, Your Honor, is only as to

18 the legal implication of sophisticated means to the facts as

19 they appear in the agreed factual basis for the Plea Agreement

20 and the PSI Report.  That's our only dispute.

21         THE COURT:  Okay.  But she says, wait a second, this

22 was sophisticated; a shell corporation was made, someone else

23 was running that, that's how we were hiding and, in fact, that's

24 what we want Ms. Garcia to do so that she can work against these

25 co-conspirators.  She doesn't quite say it like that.  She says

1    it more eloquently.  But that's what I understood.

2            Am I right or am I wrong?  I don't know.  Many times

3    I'm wrong, but it's up to you to tell me if I'm wrong.  Am I

4    wrong?

5            MS. McNAMARA:  Your Honor, you are not wrong.

6            THE COURT:  Okay.  Am I wrong in that sense?

7            MR. MACHADO:  No, Your Honor, but we would just like to

8    clarify that.  The only issue we have to this point is that we

9    don't believe that the sophisticated means enhancement applies

10   to the conduct as discussed in the PSI Report and the agreed

11   factual basis of the plea.  The Government and the defense knew

12   that entering into the Plea Agreement.  That's why we left it

13   open, in the air, for the Court to make a decision

14           THE COURT:  I'm not saying you can't argue it, but you

15   tell me if you disagree with -- see, I have to make a ruling

16   based on the facts, right?

17           I'm told the facts are -- Judge, you're giving me a

18   hard time, that's what the prosecutor is thinking.  Just give

19   her the sophisticated means.  Come on.  This is a shell

20   corporation.  She's not a patient recruiter.  She's hiding the

21   money.  She had the codefendant do this.  Of course, it's

22   sophisticated.  And frankly, anyone else who does this should

23   get the sophisticated enhancement.  That's what she says, right,

24   more eloquently?

25           MS. McNAMARA:  Yes, Your Honor.

1      THE COURT:  What do you say about the facts?  You say

2  the facts are the same, but you cannot give it.

3      MR. MACHADO:  I would say, Your Honor, at the very

4  least that it wasn't a shell corporation.  It was -- I can go

5  into the details of why the corporation, Quick Employee, was

6  incorporated in the first place, and it wasn't to launder money.

7  I would just start right off the bat saying that the amount that

8  was allegedly laundered and moved through Quick Employee,

9  $250,000, a mere 3.9 percent of the entire amount that's being

10  claimed by the Government and agreed by the defense that's

11  missing, if they're having some elaborate scheme to launder

12  money, they wouldn't just launder 33.9 [sic] percent of the --

13      THE COURT:  What was the purpose of that corporation?

14      MR. MACHADO:  I'm glad you asked that, Your Honor,

15  because the purpose as per -- her CPA advised her because she

16  wanted to be able to pay --

17      THE COURT:  Her what advisor?

18      MR. MACHADO:  Certified public accountant -- as to

19  create another corporation, that way she can hire people and pay

20  them using U Forms 1099 and not have to pay worker's comp or

21  insurance or something like that.  So that wasn't part of the

22  whole scheme.

23      THE COURT:  Not to commit a fraud, even though they

24  were committing a fraud.

25      MR. MACHADO:  The fraud was being committed most

1    definitely at Professional Medical Home Health.  If we want to

2    go further, we can say that the people that were being paid

3    through Professional Medical -- through Quick Employee were

4    being paid to commit fraud, but that was not the purpose of that

5    corporation.  It was simply to --

6         THE COURT:  For tax reasons; even if it were

7    legitimate.

8         MR. MACHADO:  Yes, sir.

9         THE COURT:  All right.  But is that sophisticated or

10   not?  It seems sophisticated, doesn't it?  The average person

11   wouldn't know that.

12        MR. MACHADO:  Well, she did it at the behest of her

13   accountant.  I mean, she --

14        THE COURT:  So the accountant is sophisticated, and she

15   followed the sophisticated advice of the accountant.  The

16   accountant may not know about the fraud, but she did.  I don't

17   know.

18        MR. MACHADO:  Yes.  I would say -- I mean, I can't say

19   whether or not the accountant is sophisticated, but our position

20   simply, Your Honor, I mean, this is a single facility being used

21   by Ms. Garcia.  She is the one there every day.  As a matter of

22   fact --

23        THE COURT:  So it should never apply.

24        MR. MACHADO:  No, it should apply.

25        THE COURT:  Give me an example.  You tell me when

1    something is sophisticated in healthcare fraud where we would

2    give the enhancement.

3            MR. MACHADO:  Well, simple, Your Honor.  I mean, well,

4    it's not a simple case, it's a sophisticated case, but any case

5    in which the defense agreed with the Government to a global

6    settlement and thereby they reach a plea agreement involving

7    several clinics, several funds, that use of mental health

8    facilities, stuff like that.  That's not the --

9            THE COURT:  So it's the number of clinics?

10           MR. MACHADO:  Well, it's not a number.  It's also the

11   coordination between the different clinics and the different

12   people, you know, exchanging patients, you know.

13           THE COURT:  All right.

14           MR. MACHADO:  We agree there was healthcare fraud here.

15   She pled to it.

16           THE COURT:  All right.  So it's the Quick Employee

17   company that's what makes it sophisticated.

18           MS. McNAMARA:  Your Honor, I would actually say that's

19   not the entirety.  I'd like to boil it down to a simple equation

20   of patients, plus documents, equals money, and we haven't quite

21   touched on the patient aspect of that yet.

22           Ms. Garcia, as well as her codefendants, both indicted

23   and unindicted, directed others to falsify medical documentation

24   in order to allow the company to bill Medicare.  For that

25   reason, we believe the sophisticated means enhancement applies,

1  in addition to the things we've already discussed.

2           THE COURT:  All right.  Anything else that the defense

3  wishes to say regarding sophisticated means?

4           MR. MACHADO:  Yes, most definitely, Your Honor, if I

5  may.  As to the falsification of documents, we would just posit

6  to the Court that this is basically a run-of-the-mill healthcare

7  fraud case, typical.  There's nothing -- I mean, in quoting the

8  actual sentencing guidelines, and I'm not trying to just go over

9  everything I stated in the objection, but there's nothing very

10 intricate, complex in the offense.

11          I need to just be emphatic on this point, that every

12 surveillance video that was provided to the defense had her in

13 an open facility, basically talking to everybody.  She wasn't in

14 a back room.  There wasn't two facilities with two people

15 coordinating a scheme.  She was the one running the whole thing.

16 It was straight up, upfront.  They had her on surveillance for

17 several years before they actually brought charges.  So she was

18 the one basically upfront, nothing sophisticated.  And I must

19 emphasize that the Quick Employee gets a 3.9 percent of the

20 whole entire amount.

21          THE COURT:  You told me that already.

22          MR. MACHADO:  Yes.  And it was only to pay the payroll

23 of Professional Home Health.  It wasn't actually to pay the

24 recruiters.

25          THE COURT:  All right.  I got it.  Any other objection

1    that you have?

2         MR. MACHADO:  As to the sophisticated means, Your

3    Honor?

4         THE COURT:  No, as to the guidelines.

5         MR. MACHADO:  Well, yes.  I mean, obviously, given that

6    we're objecting to a two-level increase, we would say that the

7    nonbinding advisory guideline of the court is 27, instead of 29.

8         THE COURT:  Okay, I got it.  Twenty-nine minus 2 is 27.

9    I got it.

10        Any other objections to the calculation?

11        MR. MACHADO:  No, Your Honor.

12        THE COURT:  Okay.  Now, having done that, what is the

13   expectation of a Rule 35?

14        MS. McNAMARA:  Your Honor, we believe there's a

15   reasonable chance for a Rule 35.

16        THE COURT:  A reasonable chance?  Okay.

17        MS. McNAMARA:  We do expect one to occur.

18        THE COURT:  Okay.  What do you want to say before I

19   sentence the defendant?

20        MS. McNAMARA:  Just simply to put on the record that we

21   are seeking forfeiture in this case.

22        THE COURT:  Of what?

23        MS. McNAMARA:  In the amount of whatever assets --

24        THE COURT:  You don't know what assets she has?

25        MS. McNAMARA:  We have some that have been identified,

1    as well as any substitute assets, and that would be in the

2    amount of $6,257,142.

3              THE COURT:  Okay.  What sentence do you want me to give

4    her?

5              MS. McNAMARA:  Your Honor, per the terms of the Plea

6    Agreement, the parties, together, believe that a guideline

7    sentence is appropriate.  The Government believes that

8    sophisticated means enhancement should be applied here.  We have

9    also agreed to recommend a guideline sentence on the low end of

10   the range.  The range here that we believe applies is 87 to 108.

11             THE COURT:  All right.  So 87 months is what you're

12   asking?

13             MS. McNAMARA:  Yes, Your Honor.

14             THE COURT:  All right.  And the defense with the

15   two-level downward adjustment, are you bound by the bottom of

16   the guidelines recommendation, too?

17             MR. MACHADO:  Yes, Your Honor, I'm bound, but

18   obviously, the Court is not bound.  Your Honor is not.

19             THE COURT:  Well, I know that, but I just want to know

20   what you think.  So you're asking for 70 months?

21             MR. MACHADO:  If Your Honor decides to go with Level

22   27, we would ask for the low end, yes, Your Honor.  As per the

23   agreement, we are bound by that.  That is correct.

24             THE COURT:  You know what question I'm going to ask.

25   Where is the money?

1          MR. MACHADO:  Following the change of plea --

2          THE COURT:  $6 million.  Who was the owner?

3          MR. MACHADO:  One of the owners was -- the

4    owner/operator was Ms. Garcia.  However, there --

5          THE COURT:  She didn't make a lot of money.  She's one

6    of these owners, owners and operators who makes no money.  What

7    kind of a capitalist is that?  You know, you just don't make any

8    money.  So where did the money go?  $6 million.

9          MR. MACHADO:  I understand, Your Honor.  Generally

10   speaking, most of the money went to unindicted co-conspirators.

11         THE COURT:  Everybody says that.  I don't want to

12   follow one of my colleagues who always wants to know the names.

13   I frankly don't want to know the names, but she's the owner.

14   She's the operator.  She said in her statement to the probation

15   officer that most of the money went to patient recruiters,

16   right?  Didn't she say that?

17         MR. MACHADO:  And silent partners, too, Your Honor.

18         THE COURT:  Oh, because patient recruiters generally

19   don't get as much money as owners, right?

20         MR. MACHADO:  Absolutely not, Your Honor.

21         THE COURT:  It would be like the waiters making more

22   money than the owner of the restaurant.  How can that happen?

23   Maybe at Joe's, I don't know, but not even there.

24         How much money did she personally make?

25         MR. MACHADO:  She made -- we can't give you a figure,

1    Your Honor.  What I can tell you is --

2            THE COURT:  Give me a ballpark.  You know, just

3    generally.  Six million is like so much money, you know.

4            MR. MACHADO:  I can tell you --

5            THE COURT:  Six years of the electric bill in this

6    month.

7            MR. MACHADO:  I would tell Your Honor just for the

8    record that --

9            THE COURT:  Whenever you say "for the record," it's not

10   for me, it's for the Court of Appeals --

11           MR. MACHADO:  Absolutely not, Your Honor.

12           THE COURT:  -- in this guilty plea, in a Plea Agreement

13   with a Rule 35?

14           So it's not for the record.  Whenever you say something

15   for the record, it is because you're willing to raise an issue

16   on appeal, right, which you can.  I don't have any problem with

17   that.

18           MR. MACHADO:  I understand, Your Honor.  I just wanted

19   Your Honor to know that.  The honest assessment of the money

20   during the change of plea hearing --

21           THE COURT:  I did, yeah.

22           MR. MACHADO:  I told Your Honor that a lot of money

23   went towards paying the employees and running the company, and

24   you said, it takes money to run the fraud and that's what we

25   wanted to tell Your Honor today.

1          THE COURT:  But usually, someone makes money, too.

2     You're not just running -- it's not a charity where you're

3     giving away all the money to everyone else and you're taking the

4     vow of poverty.  I mean, is it, or is this one of those

5     unusual cases?

6          MR. MACHADO:  Well, I don't know if I can say unusual.

7     What I say is that she was taken advantage of by other people

8     who actually wrote her demand letters through attorneys asking

9     for money.  They're suing her, which I think it's kind of a

10    weird move by somebody who was in the same conspiracy, saying to

11    her, hey, listen -- they were basically taking all her money.

12    Obviously, she's accepting responsibility for her role in this

13    offense, but whatever money is left is minimal.  And she

14    basically -- as Your Honor can see in the PSI Report, she has a

15    negative net worth of $390,000 and a negative monthly flow of

16    424 bucks.  So she is in ruins.  The money is just gone.

17         Just to clarify, there's reference in the PSI Report

18    that money went to other family members.  That money is also

19    gone, too.

20         THE COURT:  People spend money, right?

21         MR. MACHADO:  Yes, Your Honor.

22         As I indicated in the Sentencing Memorandum, it wasn't

23    anything like a flashy lifestyle or spending money, buying new

24    toys or anything like that.  I mean, it's just a very

25    unfortunate situation, but she got involved with this offense.

1    She's taken responsibility from day one.  She's helping bring

2    these people to justice, and she's just here to, you know,

3    apologize to the Court and to the Government for whatever she

4    did throughout those years.

5            THE COURT:  Anything else?  Co-counsel want to say

6    anything?

7            MR. GONZALEZ:  No, Your Honor.

8            THE COURT:  Okay.  Defendant, what do you wish to say

9    before -- by the way, where is the boat?

10           MR. MACHADO:  The boat is in her residence, Your Honor.

11           THE COURT:  A boat.  What kind of a boat?

12           MR. MACHADO:  I can't remember the exact name of it.

13   It's in the PSI Report.

14           THE COURT:  Give me a number of feet.  Usually people

15   brag about the size of boats.  What size of a boat is it?

16           MR. MACHADO:  I can tell you it cost --

17           THE COURT:  No, don't tell me what it cost.  Give me

18   the size.  She probably knows.

19           THE DEFENDANT:  Twenty-four.

20           MR. MACHADO:  Twenty-four feet, Your Honor.

21           THE COURT:  Okay, 24 feet.  And it's just sitting in

22   her yard?

23           MR. MACHADO:  Yes, Your Honor.

24           THE COURT:  Okay.

25           THE DEFENDANT:  2005.

1           MR. MACHADO:  It's a 2005.

2           THE COURT:  A 2005 boat that she's giving up, I take

3    it, right?

4           MR. MACHADO:  She's willing to give it up, Your Honor.

5           THE COURT:  Why hasn't the Government -- I'm sorry.  I

6    didn't hear what else she said.

7           MR. MACHADO:  What she was trying to tell Your Honor is

8    that basically she owes a loan on that boat, so it doesn't

9    really have equity, but she's willing to surrender it to the

10   Government.

11          THE COURT:  The boat is worth $45,000 and there's a

12   $38,000 loan.

13          MR. MACHADO:  She is willing to surrender it to the

14   Government, Your Honor.

15          THE COURT:  So there would be a few thousand dollars

16   towards the $6 million.  That's a long way.

17          MR. MACHADO:  It is a long way, Your Honor.

18          THE COURT:  What do you want to say, Ms. Garcia, before

19   I sentence you?

20          THE DEFENDANT:  Your Honor, first of all, I want to ask

21   forgiveness from God, apologize to you, to society, to my

22   family.  At this time, we are living a true nightmare because of

23   my irresponsible acts and behavior.

24          This wrongdoing has brought me to this horrible

25   situation and brought me before you where I await your wise and

Sentencing

1  fair decision.  I swear before you and before God that I will do

2  my best to be a productive member of society in the future.  I

3  will use this experience and apply it to the upbringing of my

4  11-year-old son so that he will be a respectful, good member of

5  society, who will be a law-abiding member of society, keeping in

6  mind that respect for the law is obligatory, it's mandatory.

7  And I have communicated this to him so that he would understand

8  it.

9         Today, I have the support of my family, of my friends,

10  of God, and I'm certain that if I am given an opportunity, my

11  life will be different.  And I know that I can achieve that with

12  God's help and the goodwill and support that I have today.  I

13  want to become a better person and better myself and put all of

14  my efforts toward that goal, and I swear that before you, so

15  that I can make the right decisions and know the proper people

16  to associate with so that I will make the best decisions.  And I

17  will have it by my side and not fail again.  That's all that I

18  would like to say today.  That's all.  Thank you.

19         THE COURT:  After having heard from all parties, as you

20  all know the first obligation of the Court is to read the

21  Presentence Investigation Report and then hear argument and then

22  properly calculate it.  After that, the next obligation of the

23  Court is to apply 18 U.S.C. Section 3553(a).

24         In this case, the only objection has to do with the

25  sophisticated means and for the reasons stated in the Sentencing

1    Memorandum by the defense -- this is a close question, and I

2    think different judges could come up with different conclusions.

3    In this particular case, I will sustain the objection and ask

4    the probation officer to delete the two-level enhancement.

5    Therefore, the adjusted offense level will be 27.  Guideline

6    range then becomes 70 to 87 months.

7              Pursuant to the Plea Agreement and consistent with

8    3553(a), it is the judgment of this Court that you, Annarella

9    Garcia, be committed to the custody of the Bureau of Prisons for

10   a period of 70 months.  Upon release from imprisonment, you'll

11   be placed on three years' supervised release.  You must pay

12   restitution, jointly and severally, with others in the amount of

13   $6,257,142.  There's a special assessment of $100, forfeiture of

14   the assets, including the boat and any residence and any other

15   item linked to this conspiracy to commit healthcare fraud.  If

16   the defendant earns wages under the federal prison industry's

17   job, she must pay 50 percent of the wages earned.  If she does

18   not, she must pay a minimum of $25 per quarter.  And when she's

19   released, she should pay 20 percent of her monthly gross

20   earnings.  And you want me to recommend substance abuse?

21             MR. MACHADO:  Yes, Your Honor, respectfully.

22             THE COURT:  Why?  Because she has a dependency on her

23   antianxiety medication, Xanax?  Is that what it is?

24             MR. MACHADO:  Yes, it's Xanax.

25             THE COURT:  Anybody that takes Xanax should go into the

1    drug treatment?

2            MR. MACHADO:   Yes, Your Honor.  At least two years

3    prior to the Indictment, she had been dependent and addicted to

4    Xanax and other antidepressants.  The PSI reflects that

5    information.

6            THE COURT:  It does.

7            MR. MACHADO:  And based on that, we would just --

8            THE COURT:  Would you be asking if she weren't getting

9    any time off for drug treatment in prison?

10           MR. MACHADO:  She would be asking for it, yes, Your

11   Honor.

12           THE COURT:  You would ask for that even if you don't

13   get time off?  That's not one of the considerations?

14           MR. MACHADO:  Your Honor, she has represented to me --

15           THE COURT:  Is that one of the considerations?  Did you

16   tell her that she can get time off if she does the drug

17   treatment?

18           MR. MACHADO:  I did tell her that, Your Honor.

19           THE COURT:  Okay.  All right.  I'll recommend it.

20           MR. MACHADO:  Thank you.

21           THE COURT:  Substance abuse.

22           Did she give up the right to appeal?

23           MS. McNAMARA:  Yes, Your Honor.

24           THE COURT:  You gave up the right to appeal.  The

25   Notice of Appeal has to be filed within 14 days.  Do you

1   understand that?

2           Do you understand that, Ms. Garcia?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  Did anyone force you or threaten you in

5   order to give up your right to appeal?

6           THE DEFENDANT:  No, Your Honor.

7           THE COURT:  Are you satisfied with both of your

8   lawyers?

9           THE DEFENDANT:  Yes.

10          THE COURT:  I'm going to take her into custody now so

11  she can start doing her time.

12          MS. McNAMARA:  Your Honor, at this time, the Government

13  would seek to move Count 2 of the Indictment.

14          THE COURT:  Granted.  So I know her family or relatives

15  or friends are here.  She can give her belongings.  The sooner

16  she starts, the sooner that she gets out.

17          MR. MACHADO:  Your Honor, if I may?  The Government and

18  the defense would jointly recommend that she be given a

19  surrender date of 45 days, so that she may continue cooperating

20  and helping the Government regain --

21          THE COURT:  Because if she's across the street, she

22  won't cooperate.

23          MR. MACHADO:  She would cooperate.

24          THE COURT:  Either way, she cooperates, right?

25          MR. MACHADO:  Well, yes, Your Honor, but --

1          THE COURT:  So that won't make any difference, right?

2          MR. MACHADO:  It all depends on how the Government

3    wishes to meet with her.  I mean, I would just say that the

4    Government is requesting --

5          THE COURT:  Has the prosecutor ever had anybody

6    cooperate who's incarcerated?

7          MS. McNAMARA:  Yes, Your Honor.

8          THE COURT:  And you know how to do it, right?  Then you

9    can continue to do that.  If you know how to do it, she can

10   continue to do that.

11         MS. McNAMARA:  Nothing further from the Government,

12   Your Honor.

13         THE COURT:  Take her into custody.  Motion for a

14   voluntary surrender date is denied.  While the marshals are

15   doing that, then we'll do the other defendant.  But let me,

16   while they do that, call someone who is out on bond.

17       (The hearing was concluded at 10:55 a.m.)

18                    C E R T I F I C A T E

19       I hereby certify that the foregoing is an accurate

20   transcription of proceedings in the above-entitled matter.

21

22   _____          _____
          DATE                 GILDA PASTOR-HERNANDEZ, RPR, FPR
23                             Official United States Court Reporter
                               Wilkie D. Ferguson Jr. U.S. Courthouse
24                             400 North Miami Avenue, Suite 13-3
                               Miami, Florida  33128      305.523.5118
25                             gphofficialreporter@gmail.com